UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| PAULETTE WALKER PERRY, | Case No. 2:18-cv-01573-RFB-MDC |
| Petitioner, | |
| v. | **ORDER** |
| DWIGHT NEVEN[1], *et al.*, | |
| Respondents. | |

Paulette Walker Perry is a Nevada prisoner who was convicted of first-degree murder with use of a deadly weapon, conspiracy to commit robbery, and robbery with use of a deadly weapon and is serving a sentence of life without the possibility of parole. Perry filed an amended petition for writ of habeas corpus under 18 U.S.C. § 2254, alleging that her counsel failed to communicate a plea offer to her in violation of her Sixth Amendment rights. ECF No. 30. The Court denies the remaining ground of Perry's petition, denies her a certificate of appealability, and directs the clerk to enter judgment accordingly.

**I.    BACKGROUND**

In April 2001, David Sygnarski, was discovered deceased in a hotel room rented by Perry and her companion, Kenneth Grant ("Grant"). ECF No. 30-1 at 4. Perry, Grant, and Sygnarski shared drugs in the hotel room. Id. at 5. Perry and Grant killed and robbed Sygnarski. Id.

Perry challenges a 2003 judgment of conviction for first degree murder with use of a deadly weapon, conspiracy to commit robbery, and robbery with use of a deadly weapon. ECF No. 39-35. The state court sentenced Perry to life without the possibility of parole for the murder count, a

---

[1] According to the state corrections department's inmate locator page, Perry is incarcerated at Florence McClure Women's Correctional Center ("FMWCC") *See https://ofdsearch.doc.nv.gov/form.php*. The department's website reflects that William Reubart is the warden of that facility. *See https://doc.nv.gov/Facilities/FMWCC_Facility/.* At the end of this order, the Court directs the Clerk of the Court to substitute Petitioner's current immediate physical custodian, William Reubart, as Respondent for the prior Respondent Dwight Neven pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

consecutive term of life without possibility of parole for the use of a deadly weapon, a concurrent term of 28 to 72 months for conspiracy to commit robbery, and a consecutive term of 72 to 180 months for the robbery count with a consecutive term of 72 to 180 months for the use of a deadly weapon. Id.

The Nevada Supreme Court affirmed Perry's conviction. ECF No. 40-10. In December 2005, Perry filed a state habeas petition and the state court denied the petition. ECF No. 40-12. In July 2008, the Nevada Supreme Court dismissed Perry's appeal as untimely. ECF No. 40-30.

In August 2018, Perry filed a second state habeas petition. ECF No. 40-33. The state court dismissed the second state habeas petition as time-barred and successive finding Perry failed to establish good cause and prejudice. ECF No. 40-40. The Nevada Court of Appeals reversed and remanded instructing the state district court to conduct an evidentiary hearing to determine whether Perry demonstrated good cause to overcome the procedural defects to her petition. ECF No. 41-1.

On remand and following an evidentiary hearing, the state court ruled that Perry failed to demonstrate good cause and prejudice on the basis that her trial counsel did not relay a plea offer to her. ECF No. 41-10. The Nevada Court of Appeals affirmed the state court's ruling finding that Perry failed to meet her burden to demonstrate good cause and actual prejudice because she did not demonstrate a reasonable probability there was a plea offer from the State that she would have accepted absent counsel's failure to advise her of it. ECF No. 41-25.

In August 2018, Perry initiated this federal proceeding. ECF No. 1-1. In April 2022, following appointment of counsel, Perry filed an amended petition alleging one claim for relief. ECF No. 30. The Court denied Respondents' motion to dismiss Perry's amended petition as untimely, or in the alternative, as procedurally defaulted, finding the Nevada appellate court's decision did not rest on an independent and adequate state ground. ECF No. 49 at 3. The Court further found that Perry did not delay in presenting her claim in her federal petition upon discovery of the existence of a plea offer and that she was diligent in discovering the factual predicate of her claim. Id. at 5.

///

///

## II. GOVERNING STANDARDS OF REVIEW

### a. Review under the Antiterrorism and Effective Death Penalty Act

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in habeas corpus cases under the Antiterrorism and Effective Death Penalty Act ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." Lockyer v. Andrade, 538 U.S. 63, 73 (2003) (first quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000), and then citing Bell v. Cone, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 75.

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

///

///

### b. Standard for Evaluating an Ineffective Assistance of Counsel Claims

In Strickland, the Supreme Court propounded a two-prong test for analysis of ineffective assistance of counsel claims requiring Petitioner to demonstrate that: (1) the counsel's "representation fell below an objective standard of reasonableness[;]" and (2) the counsel's deficient performance prejudices Petitioner such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688, 694 (1984). Courts considering an ineffective assistance of counsel claim must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. It is Petitioner's burden to show "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Id. at 687. Additionally, to establish prejudice under Strickland, it is not enough for Petitioner to "show that the errors had some conceivable effect on the outcome of the proceeding." Id. at 693. Rather, errors must be "so serious as to deprive [Petitioner] of a fair trial, a trial whose result is reliable." Id. at 687.

Where a state court previously adjudicated the ineffective assistance of counsel claim under Strickland, establishing the court's decision was unreasonable is especially difficult. See Richter, 562 U.S. at 104-05. In Richter, the Supreme Court clarified that Strickland and § 2254(d) are each highly deferential, and when the two apply in tandem, review is doubly so. See id. at 105; see also Cheney v. Washington, 614 F.3d 987, 995 (9th Cir. 2010) (internal quotation marks omitted). The Court further clarified, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Richter, 562 U.S. at 105.

### III. DISCUSSION

#### a. Ineffective Assistance of Counsel for Failure to Communicate Plea Offer

Perry alleges that her trial counsel, Andrew Myers ("Myers") rendered ineffective assistance for failure to inform Perry of a plea offer the State extended to resolve her case. She asserts that a prosecutor spoke to James Conklin ("Conklin"), an investigator for the case, when Conklin was reviewing Perry's file at the district attorney's office a few weeks before trial. The

prosecutor asked Conklin why he had not heard anything from Myers about the offer and informed Conklin the offer "was for second degree murder, twenty years enhanced." Perry alleges that had Myers relayed the offer to her, she would have accepted it.

### b. Additional Background Information

On remand, the state district court conducted a post-conviction evidentiary hearing to determine whether Perry demonstrated good cause to overcome the procedural defects to her petition and to address whether or not the State extended an offer. Myers testified at the evidentiary hearing that he was licensed to practice in Nevada since 1988. He further testified that "I don't think I've ever been accused of not giving an offer and I was obsessive about it. In fact, I have OCD. Do I remember this offer? No. I believe that's 'cause I never got it." Myers testified as follows:

> There was no offer beyond just allowing the case to go to trial. The DAs didn't find any redeeming qualities to this and they didn't wanna – they didn't wanna settle. And even though [Perry] was not necessarily the easiest client for me, I never would let that get in the way of my tethering an offer given that, you know, what was at stake for her, but it was a ugly case with grisly facts.

Myers also testified that he prepared Perry for trial, and that during trial Perry decided to testify, which was a "complete surprise" to Myers. He further testified that "when she got up on the stand, her entire story changed."

Conklin testified at the evidentiary hearing that he worked on the case as a private investigator and that it was his first murder case. Before trial he went to the district attorney's office to review Perry's file. While he was there, the prosecutor asked Conklin why he hadn't heard from Myers about the plea bargain and asked Conklin to have Myers call him. Conklin testified that the prosecutor informed Conklin that the plea deal would be "20 year – second degree murder, 20 year enhanced." He further testified that when he informed Myers that there was a plea deal, Myers stated, "yeah, but it's enhanced so we're not going to take that …."

In 2017, a friend of Perry contacted Conklin asking if there was anything that could help Perry's case and Conklin recalled the plea offer. Conklin further testified that in 2017 he attempted to locate trial counsel's file, which he agreed would contain the plea bargain if it was in writing, but the file was given to Perry's appellate counsel, who ultimately destroyed the file in the ensuing

decade.

Perry testified that she informed Myers that she wanted to resolve her case, "[b]ecause I was guilty of the crime, and I did not want my family to be subjected to what I would have to say when I took the witness stand." She testified that Myers informed her that Myers was discussing a deal with the prosecutor for second degree murder with a 10-to-12-year sentence. When asked if Myers told Perry that there actually had been an offer, Perry testified that "he never said there wasn't an offer. He just never directly answered me. He just evaded the question." Perry further testified that she would have accepted "pretty much anything other than going to trial …." Upon cross-examination, Perry testified that her testimony at trial was not true.

### c. Reconsideration of Procedural Default Ruling

Respondents argue that the Court should reconsider its procedural default determination under Rules 59(e) and 60 of the Federal Rules of Civil Procedure. They argue that the Court's procedural default determination is clearly erroneous because the Nevada Court of Appeals first held Perry's second state habeas petition was untimely and successive, which did not involve a question of federal law. The Nevada Court of Appeals then analyzed the application of federal law, Lafler v. Cooper, 566 U.S. 156 (2012) and Missouri v. Frye, 566 U.S. 133, 145 (2012), to determine whether Perry could demonstrate good cause and prejudice to overcome the procedural bar. Therefore, the Nevada appellate court's application of the procedural bar was independent and adequate.

Perry relies on Cooper v. Neven, 641 F.3d 322, 332 (9th Cir. 2011), where the Ninth Circuit held the state law "cause-and-prejudice" inquiry coincides precisely with the merits of a federal Brady claim because "the second and third Brady components parallel good cause and prejudice necessary to overcome the procedural bars, such that proving the State withheld evidence generally establishes cause, and proving that the withheld evidence was material establishes prejudice." 641 F.3d at 332-33. The Ninth Circuit concluded that the Nevada procedural bar was not independent and adequate and did not bar federal habeas review of the Brady claim. Id. Perry asserts that the Nevada Court of Appeals' procedural default analysis was interwoven with federal law because it considered whether Perry could establish cause by demonstrating a reasonable probability that

6

there was a plea offer from the State and whether Perry could establish prejudice by showing that she would have accepted the offer absent counsel's failure to advise her of it.

Respondents further argue that if the Court finds that the claim is procedurally barred, Perry still cannot demonstrate good cause and prejudice. They argue, in the alternative, that if the Court does not reconsider its procedural default determination, the state appellate court's decision is entitled to deference as a merits determination.

### d. State Court Determination

The Nevada Court of Appeals affirmed the ruling that Perry's second state habeas petition was untimely and successive and determined that Perry failed to demonstrate good cause and prejudice:

> Perry filed her petition on August 8, 2018, more than 13 years after issuance of the remittitur on direct appeal on December 28, 2004. *See Perry v. State*, Docket No. 41256 (Order of Affirmance, December 1, 2004). Thus, Perry's petition was untimely filed. *See* NRS 34.726(1). Moreover, Perry's petition was successive because she had previously filed a postconviction petition for writ of habeas corpus that was decided on the merits, and it constituted an abuse of the writ as she raised claims new and different from those raised in her previous petition. Perry's petition was procedurally barred absent a demonstrate of good cause and actual prejudice. *See* NRS 34.726.726(1); NRS 34.810(1)(b); NRS 34.810(3).
>
> . . .
>
> Perry claimed she had good cause because she has new factual evidence that was not reasonably available to her until postconviction counsel was retained and a proper investigation was done. Perry argues this new evidence showed that trial counsel failed to inform her of a plea offer the State extended to resolve her case. "[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 566 U.S. 134, 145 (2012). To demonstrate prejudice concerning the plea negotiation process, "a defendant must show the outcome of the plea process would have been different from competent advice." *Lafler v. Cooper*, 566 U.S. 156, 163 (2012).
>
> The district court conducted an evidentiary hearing concerning this issue. Perry's trial counsel testified that his standard practice is to always inform a defendant of a plea offer and that he is obsessive about informing clients of plea offers. Counsel testified that if Perry did not hear of a plea offer, that is because he did not receive one. The district court found counsel's testimony was credible. The district court also found the testimony Perry presented concerning a potential plea offer was insufficient to demonstrate the State actually extended a plea offer that would have resolved her case. Substantial evidence supports the district court's findings, and this court will not "evaluate the credibility of witnesses because that is the responsibility of the trier of fact," *Mitchell v. State*, 124 Nev. 807, 816, 192 P.3d 721, 727 (2008).

> Given the district court's findings, Perry failed to meet her burden to demonstrate good cause and actual prejudice because she did not demonstrate a reasonable probability there was a plea offer from the State that she would have accepted absent counsel's failure to advise her of it. Therefore, we conclude the district court did not err by denying the petition.

### e. Determinations

> i. The Court did not err in determining that the Nevada appellate court's decision was not independent and adequate.

A district court possesses "inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." City of Los Angeles v. Santa Monica Baykeeper, 254 F.3d 882, 885 (9th Cir. 2001); see also Fed. R. Civ. P. 54(b) (interlocutory decisions "may be revised at any time before the entry of judgment adjudicating all the claims and all the parties' rights and liabilities"). "[A] motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 880 (9th Cir. 2009).

Respondents fail to demonstrate that the Court erred in its finding that the Nevada Court of Appeals' decision did not rest on an independent and adequate state ground. Even if the state procedural rules have been held to be independent and adequate in previous Ninth Circuit cases, the Court must conduct a "case-by-case inquiry . . . to conclude that a state court decision is based on independent grounds." See Vang v. Nevada, 329 F.3d 1069, 1075 (9th Cir. 2003) (holding that NRS §34.810 was independent where the court did not "consider the merits of a constitutional claim when deciding whether or not to apply the bar"); Moran v. McDaniel, 80 F.3d 1261, 1268-70 (9th Cir. 1996) (holding a Nevada state rule independent where the court only discussed the merits of the claim "strictly for the purpose of demonstrating that [Moran] cannot overcome his procedural defaults by a showing of cause and prejudice").

In ruling that Perry did not establish cause and prejudice, the Nevada Court of Appeals did not discuss the merits of the claim "simply to determine whether the claim could have been raised earlier, here the claim is itself the justification for the default." Cooper, 641 F.3d at 333. In Cooper, the state appellate court explicitly relied on its federal Brady analysis as controlling the outcome

of its state procedural default analysis. Similarly, here, the Nevada Court of Appeals explicitly relied on United States Supreme Court rulings in Missouri and Lafler to determine whether counsel communicated the plea offer and whether the outcome of the plea process would have been different, which "dovetail exactly with the cause-and-prejudice analysis." Cooper, 641 F.3d at 333. Accordingly, the Court did not commit clear error in determining that the Nevada Court of Appeals decision did not rest on an independent and adequate state ground and does not bar federal habeas review.

          ii.    The Court denies habeas relief on deferential review.

The Court concludes on deferential review that the Nevada Court of Appeals reasonably determined Perry failed to show cause and prejudice to support her claim on the state court record.

Perry fails to overcome the strong presumption that her counsel's conduct "falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. 689. "[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." Missouri, 566 U.S. at 145.

Conklin testified that the prosecutor informed Conklin that there was a plea bargain, and that Conklin discussed the plea bargain with Myers showing that Myers was aware of it. As stated by the Nevada Court of Appeals, however, the state district court found trial counsel's testimony that if Perry did not hear of a plea offer, that is because trial counsel did not receive one was credible. Trial counsel testified that he had a standard practice of always informing a defendant of a plea offer and that he was obsessive about informing clients of plea offers. The Court on habeas review may not "redetermine the credibility of witnesses whose demeanor has been observed by the state trial court." Aiken v. Blodgett, 921 F.2d 214, 217 (9th Cir. 1990) (citing Marshall v. Lonberger, 459 U.S. 422, 434 (1983)).

The state court record supports the Nevada Court of Appeals' determination that Myers' testimony was credible. The prosecutor on the case provided that if an offer was made it would have been in either written form or may have been noted in the defendant's file or acknowledged in the court's minutes, or both. There is no record of a formal written offer, or an offer made record of in the state court's minutes. Without a formal plea offer, counsel was not ineffective in failing

to communicate one. Lafler, 566 U.S. at 168.

The Nevada Court of Appeals reasonably concluded that Perry failed to demonstrate a reasonable probability there was a plea offer from the State that she would have accepted absent counsel's failure to advise her of it. To show prejudice, a petitioner must demonstrate a reasonable probability that she would have accepted the plea had she been afforded effective assistance of counsel and that "the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." For example, the defendant must show a reasonable probability that the State would not have withdrawn the offer and that the trial court would not have refused to accept it. See Lafler, 566 U.S. at 164. Although Perry testified that she would have accepted any offer rather than go to trial, she also testified that she lied under oath while testifying at trial. Perry testified that Myers informed her that he was engaging in plea negotiations for a second-degree murder charge with a 10 to 12 year sentence but contends that he would evade her questions about whether there was an offer. The Nevada Court of Appeals relied on the district court's finding that the testimony Perry presented concerning a potential plea offer was insufficient to demonstrate the State actually extended a plea offer that would have resolved her case. Accordingly, the Nevada Court of Appeals reasonably determined that Petitioner failed to demonstrate prejudice.

Giving the Nevada appellate court's ruling, and the deference required by both § 2254(d) and Strickland, the Court determines that the Nevada Court of Appeals reasonably ruled that Perry failed to meet her burden to demonstrate good cause and actual prejudice because she did not demonstrate a reasonable probability there was a plea offer from the State that she would have accepted absent counsel's failure to advise her of it. The state appellate court's decision was neither contrary to, nor an objectively unreasonable application of clearly established law as determined by the United State Supreme Court. The Court therefore denies habeas relief.

### IV.   CERTIFICATE OF APPEALABILITY

This is a final order adverse to Petitioner. Rule 11 of the Rules Governing Section 2254 Cases requires the Court to issue or deny a certificate of appealability ("COA"). Therefore, the Court has sua sponte evaluated the claims within the petition for suitability for the issuance of a

COA. See 28 U.S.C. § 2253(c); Turner v. Calderon, 281 F.3d 851, 864-65 (9th Cir. 2002). Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether this Court's procedural ruling was correct. Id. Applying these standards, this Court finds that a COA is unwarranted.

## V.   CONCLUSION

**IT IS THEREFORE ORDERED** that Petitioner Paulette Walker Perry's amended petition for writ of habeas corpus under 28 U.S.C. § 2254 (ECF No. 30) is **DENIED**. All other pending motions are **DENIED**.

**IT IS FURTHER ORDERED** that a Certificate of Appealability is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of the Court is directed to substitute William Reubart for Respondent Dwight Neven, enter judgment accordingly, and **CLOSE** this case.

**DATED:** September 30, 2024

_____
RICHARD F. BOULWARE, II
UNITED STATES DISTRICT JUDGE